The town of HEBRON *against* The town of COLCHESTER.

MOTION for a new trial.

This was an action of *assumpsit*, brought by the town of *Hebron* against the town of *Colchester*, to recover the amount of expenses incurred for the support of one *John Burke*, a pauper. The defendants pleaded the general issue.

On the trial, the following facts were proved, *viz.* That in the year 1775, *William Burke*, a native of *Ireland*, in the kingdom of *Great-Britian*, came into the *United States*, as a soldier in the *British* army, and continued in the *United States*, in the army, until *January* 12th, 1778, when he deserted from the *British* army, and in the month of *March* following, came into the town of *Montville*, in *New-London* county ; that he lived in *Montville*, until the autumn of the year 1780; and that on the first day of *April*, 1779, he was lawfully married to *Lettice Minard*, a settled inhabitant of *Montville ;* that in 1780, he, with his wife, removed into the town of *Colchester*, and that on the 24th day of *December*, 1780, *John Burke*, the pauper, and legitimate son of *William Burke* and his wife *Lettice*, was born, at *Colchester ;* that in the year 1781, *William Burke*, with his wife, and son, *John Burke*, removed back into the town of *Montville*, and there continued to reside, until the year 1793, and that sometime in this year, *William Burke*, with his wife, and son, *John*, removed to *Colchester*, and there continued to reside, until 1794 ; that in the year 1794, *William Burke*, with his wife and son, *John*, removed from *Colchester*, to the town of *East-Haddam*, in *Middlesex* county, and in the same year purchased land and real estate in *East-Haddam*, of a greater value than one hundred pounds, and took a deed of bargain and sale thereof, in the usual form ; that *William Burke* and his wife, continued to live in *East-Haddam*, from the year 1794, until the time of

A subject of the king of *Great-Britain*, came into this country in 1775 ; in 1778, he came into this state, and was here domiciliated ; in 1794, he purchased lands in this state, of greater value than 100 *l.* ; held, that such person was not an alien ; and that by such purchase, he became legally settled in the town where the lands were situated.

Children take the settlement of the father ; but if the father has no settlement, and the mother has one, they take the settlement of the mother.

The wife takes the settlement of her husband, if he has one,

and her settlement becomes extinct ; but if the husband has no settlement, that of the wife is suspended, so long only, as they continue to cohabit together.

VOL. V.                    W

the commencement of the action ; that *John Burke* continu-
ed to live in *East-Haddam*, in his father's family, from the
year 1794, until the 22d day of *March*, 1803, at which time
he removed into *Hebron*, and there continued to live with
his wife and family, until the commencement of the action,
excepting six months in the year 1805, during which time,
he and his family resided in *Colchester ;* that in the year
1789, *William Burke*, while residing in the town of *Montville*,
was admitted a freeman of this State, and that he ever after-
wards, exercised all the rights and privileges of a freeman ;
and that the town of *Hebron* had expended the sum of 111
dollars, 32 cents, for the support of *John Burke*.

Upon this state of the facts, the Superior Court instruct-
ed the jury, that the law was so, that *Willam Burke* was an
*alien*, and could not purchase and hold lands in this State ;
that his wife was a settled inhabitant in the town of *Mont-
ville ;* but that the settlement of the wife, by her intermar-
riage, was suspended ; and that the settlement of *John Burke*,
was in *Colchester ;* and that they ought to return their ver-
dict for the plaintiffs. The jury found a verdict for the plain-
tiffs, accordingly : And the defendants moved for a new
trial, on the ground of a misdirection ; which motion was re-
served for the opinion of the nine Judges.

*Dana* and *Goddard*, in support of the motion, contended,
that *William Burke* was capable of holding lands in this
State ; and consequently, by virtue of the statute, was legally
settled in the town of *East-Haddam.* *Talbot* v. *Janson* 3
*Dall. Rep.* 153. *Alexander Murray* v. Schooner *Charming
Betsey*, 2 *Cranch*, 54. *Calvin's* case, 7 *Co.* 28. 2 *Tuck. Black.*
note (*c*) Append. 45, 62. 1 *Wood.* 382.

But, admitting that *William Burke*, had no settlement, then
the pauper, *John Burke*, would take the settlement of his
mother, which was in *Montville ;* so, that in either case, the
town of *Colchester* would not be liable for his support. *Nor-
wich* v. *Windham*, 1 *Root's Rep.* 232. *Canaan* v. *Salisbury*,
1 *Root's Rep.* 155. 1 *Black. Com* .363. *Rex* v. The Parish of
*Westerham*, 19 *Vin. Abr.* 384. Pl. 10.

*Peters,* contra.

*William Burke,* was an alien ; and therefore, had no legal settlement in this State. The settlement of his wife, at the birth of *John Burke,* the pauper, was suspended, by her inter-marriage, and is not yet revived : so that *John Burke* could not gain a settlement either in his father's or mother's right ; his place of settlement, must, therefore, be the place of his birth. 1 *Swift's Syst.* 167. *Dawson's* Lessee **v.** *Godfrey,* 4 *Cranch,* 321. *M'Ilvaine* v. *Coxe's* Lessee, 4 *Cranch,* 209. *Hollingsworth* v. *Duane, Wallace,* 51.

SMITH, J. In this case, two questions are presented for the consideration of the court. 1. Did *William Burke* gain a settlement in *East-Haddam,* by the purchase of real estate ? And 2. if this be not so, does the settlement of *John Burke,* the pauper, follow the settlement of his mother, at *Mont-ville ?*

The question, whether *William Burke* gained a settlement in *East-Haddam,* by the purchase of lands in that town, de-pends on his capacity to purchase and hold lands.

It is objected, that he was an *alien,* and by virtue of the statute, incapable of holding lands.(*a*) Was *William Burke,* then, an alien or foreigner, at the time when he made this purchase ? In forming my opinion on this point, I lay no stress on his having been previously admitted a freeman of the town of *Montville.* This act of the town, is no farther operative than as it relates to his elective franchise.

It has been argued, that the *antenati* of *England,* and of *America,* can hold lands in both countries ; and *Calvin's* case is relied upon to prove this doctrine. A person born in *America,* before the declaration of independence, would, per-haps, have a right to hold lands in *England,* because he once owed allegiance to that government ; and although a sever-ance of the *United States* from *England,* may release him from his allegiance, it cannot deprive him of his rights. But those born in *England,* before that period, can have no

(*a*) 1 *Stat. Conn.* tit. 82. c. 2, s. 1.

pretence to citizenship in this country, on that account; their situation is totally different; they never owed allegiance to this government, and never were citizens of this country. These principles were recognized by the court in the case of *Dawson's* Lessee v. *Godfrey*, 4 *Cranch*, 321.

*William Burke* could not, therefore, have the right to purchase and hold lands in this country, merely from his being born under the *British* government, at a time when the *United States* were subject to that government. He never owed allegiance to the *American* government. In *Calvin's* case, the *Scotchman* owed allegiance to *Great-Britain*, whether born in *England* or *Scotland*.

The next enquiry is, what effect did the treaty of peace have upon those who deserted from the *British* army, after the sovereignty and independence of the *United States* had been announced by congress, and were actually domiciliated in this country, before a recognition of that independence, by the treaty of peace? There is nothing to be found, either in the provisional articles, or the definitive treaty, which expressly relinquishes the right of allegiance, which the *British* government claimed relative to the people of the *United States*. This is, however, implied, from the explicit acknowledgment of the sovereignty and independence of the several states. A rational construction of this instrument, will decide the question before the court; and here, as in all other written instruments, we are to look for the meaning of the parties; and for this purpose, the situation of the parties, their objects and views, are all important to be considered.

We were, at the time of forming the treaty, in a state of civil war; and the *British* government considered us rebels and traitors; and if we had been vanquished, we must have been treated accordingly. There would have been no difference in the view of that government, between those who were in this country, at the declaration of independence, and those who came here afterwards; they were all equally rebels. So, on the other hand, it is natural to suppose, that the *American* government would wish to obtain a relinquishment of the claim to allegiance, for all those who had united

with us, in our struggle for freedom ; whether they were in the country at the declaration of independence, or not.

Under such circumstances, and with such views, the treaty of peace was made ; containing an explicit acknowledgment of the sovereignty and independence of the states. Can the government of *Great-Britain*, after this, claim allegiance from any of its former subjects, who had chosen their side, united with the *American* people, and were actually domiciliated in this country, at the time of making the treaty ? It appears to me, perfectly clear, that no such claim can be made ; and it is equally clear, that the *American* government is bound to protect this description of persons, and may claim from them the duty of allegiance. The case of *M'Ilvaine* v. *Coxe's* Lessee, reported in 2 *Cranch*, 280. and in 4 *Cranch*, 209. has been cited, and relied upon. In that case, the court decided, that a citizen of *New-Jersey*, electing to become a subject of the *British* King, and abandoning his own government, after the declaration of independence, and before the treaty of peace, was not thereby released from his allegiance to *New-Jersey* ; and that the treaty was only a recognition of our independence, and not a grant of it. That case differs widely from the present. The *American* government did not, by the treaty, relinquish its claim to allegiance from any persons whatever ; nor is there any thing, either in the letter or spirit of the treaty, from which such a relinquishment can be inferred ; while it is agreed, on all hands, that it was owing to a recognition of our independence, by *Great-Britain*, in the treaty of peace, that she renounced all claim to allegiance, which she before had, from the people of the *United States*. The *American* people claimed to be free, from the time of the declaration of independence. *Great-Britain* denied that claim, and treated us as rebels and traitors; until, finally, that government was induced to form a treaty acknowledging our independence. This must, of course, be a recognition of that independence, both at the declaration, and also at the time of forming the treaty, so as to enable the *United States* to claim, as her citizens, all who were here at either

period; otherwise, those who had actually been admitted citizens agreeable to the laws of particular states, between those periods, would be excluded. There is, then, this difference in the operation of the treaty as respects the two nations ; *viz.* while it gives to *America* all who were united with her at either period, it leaves to *England,* only such as were under her immediate protection, at the declaration of independence. These principles being founded on a construction of the treaty with *England,* do not apply to any other nation or kingdom, whose subjects came to reside here, after our declaration of independence ; who, it must be admitted, would gain no right to citizenship, by the treaty of peace. Indeed, as to such persons, the *British* government having no power to control them, could form no stipulations regarding their rights.

I therefore, conclude, that *William Burke,* by the treaty of peace, was released from his allegiance to the king of *Great-Britain,* and became a citizen of the *United States.* Whether he remained a citizen of the *United States* merely, or whether he thereby became a citizen of this state, is unimportant to consider; since the value of the land by him purchased, in either point of view, would be sufficient to make him an inhabitant of *East-Haddam.* I have no doubt, but that the power of Congress to conclude a treaty, would be sufficient to constitute citizenship, in any of the individual states, and that *William Burke,* by the treaty, and his residence here, at the time, would become a citizen of this state, without any particular act of this government, making him such.

This view of the subject, in my opinion, is decisive of this case ; but, as another point has been made, and fully discussed at the bar, and having no doubt in relation to it, I feel no reluctance to express my opinion on that point also.

The question in this part of the case, is, whether, if *William Burke* had not gained a settlement at *East-Haddam, John Burke,* the pauper, would take the settlement of his mother at *Montville ?*

It is unnecessary to go into a full investigation of all the authorities cited in this part of the case ; they clearly prove

the following positions to be correct : that when a woman marries a man, who has a settlement, she becomes settled there, and her settlement, if she has one, becomes extinct ; if they have children, these take their father's settlement ; that where a woman having a settlement, marries a husband having none, her's is suspended, though not, like most of her other rights, during coverture, but only so long as she continues to live with her husband ; for as soon as the husband leaves his wife, she may, in *England*, be removed to the place of her settlement ; and the only reason assigned, for suspending her settlement, at all, is that she cannot be separated from her husband, by a removal to the place of her settlement : And, that where there are children, whose mother has a settlement, and their father has none, they take the settlement of their mother. It follows, then, that if *William Burke* had not gained a settlement in *East Haddam*, *John Burke* must have been settled at *Montville ;* so that, in either case, there can be no recovery against the town of *Colchester*.

A new trial must, therefore, be granted.

The other Judges concurred.

New trial to be granted.