# Burrell Township *versus* Pittsburg Guardians of the Poor.

1. Children until they have acquired settlements by their own acts, remain settled where they were born, the settlement of the parents being their settlement.

2. A widow may acquire a settlement for herself, different from that of her husband.

3. It is the headship of the family which gives the settlement of the father to his children.

4. By complying with the terms of the Act of Assembly a widow may acquire a settlement which is communicable to her children.

5. The relation of a father to a minor child is different from that of a mother as to private parties; but as to the public it is the same.

October 25th 1869.    Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Quarter Sessions of *Indiana county :* No. 160, to October and November Term 1868.

In the court below this was an appeal by the Guardians of the Poor of Pittsburg, from an order made July 27th 1867, by two justices of the peace of the county of Indiana, for the removal of Aaron F. Weir, a pauper from the township of Burrell, in that county, to the Ninth Ward in the city of Pittsburg, which the justices adjudged was the pauper's legal settlement.  Commissioners were appointed to take testimony in the case.

By the testimony it appeared that the pauper was the son of McKee Weir and Nancy Weir.  The father died in Burrell township, Indiana county, about the year 1859, leaving a widow and two minor sons.  The widow with her sons moved to Cambria county, and thence in the spring of 1860, moved to the Ninth Ward, Pittsburg, with the pauper and his brother.  She there leased a house at the rent of $3.25 per month ; the pauper was then about twenty years of age ; he was in the employ of the Pennsylvania Railroad Company, and assisted in the payment of the rent from his wages.  She and her sons continued to reside in the same house for thirteen months consecutively, and paid twelve months' rent.  About a year after his mother's removal to Pittsburg the pauper became deranged ; his mother died about two years after going to Pittsburg, until which time he resided with her.  His insanity continued to increase until the order was issued, when he was taken to Dixmont Hospital, near Pittsburg.  After hearing, the court (Buffington, P. J.) vacated the order of removal, and directed the township of Burrell to pay the costs.  To this decree the township excepted, and the court sealed a bill of exceptions.

The township having taken a writ of error, assigned the order of vacation for error.

[Burrell Township *v.* Pittsburg Guardians of the Poor.]

*Stewart & Clark*, for plaintiffs in error.—After the death of the husband a widow may gain a settlement of her own: Mifflin *v.* Elizabeth, 6 Harris 17; Act of June 13th 1836, § 9, Pamph. L. 542, Purd. 797, pl. 16. Her settlement gained one for her children: 3 Burn's Just. 373; St. George *v.* St. Catharine's, 1 Settlement Cases 69; Woodend *v.* Paulspury, 2 Ld. Raym. 1473; Barton Turfe *v.* Happisburg, Burrows Sett. Ca. 49; Oulton *v.* Wells, Id. 64; St. Matthew *v.* St. Catharine, Id. 482; Dedham *v.* Natick, 16 Mass. 135; Bradford *v.* Lunenberg, 6 Verm. 481; Norwich *v.* Saybrook, 7 Conn. 384; Great Barrington *v.* Tyringham, 18 Pick. 264; Freetown *v.* Taunton, 16 Mass. 52; Hebron *v.* Colchester, 5 Day 169; Lebanon *v.* Hebron, 6 Conn. 45; Nippenose *v.* Jersey Shore, 12 Wright 402; Toby *v.* Madison, 8 Id. 60; Marion *v.* Spring, 14 Id. 308; Oxford *v.* Ramsey, 3 N. Hamp. 331; Washington *v.* Bear, 3 W. & S. 548.

*J. M. Thompson*, for defendants in error.—A widow's settlement is that of her husband: Act of 1836, § 10, Pamph. L. 543, Purd. 797, pl. 18. So of his children: Washington *v.* Bear, *supra*; Lewis *v.* Turbut, 3 Harris 147. A mother not being bound to maintain her children is not entitled to the correlative duty of service: Leech *v.* Agnew, 7 Barr 21; Fairmount Pass. Railway *v.* Stutler, 4 P. F. Smith 378.

The opinion of the court was delivered, January 3d 1870, by

THOMPSON, C. J.—There was no dispute below about the fact, that the father of the pauper Weir, had at the time of his death, which occurred in the minority of the latter, a legal settlement in Burrell township. The dispute was whether the mother had gained such a settlement, in the Ninth Ward of the city of Pittsburg, as fixed it as the settlement of her son. The learned judge ruled this in the negative, and hence this writ of error.

The undisputed facts seem to be, that Mrs. Weir, the mother of the pauper, removed to the city of Pittsburg in 1869, from Johnstown, Cambria county, where she had resided, her sons living with her, some six months or more, and took a house in the Ninth Ward of the city of Pittsburg, at the rental of $3.25 per month, and lived there, keeping house, her sons with her as her family, for thirteen months consecutively, during all of which time she paid the rent as agreed until she died; and from that time her son, the pauper, became utterly imbecile, wandering about without capacity to take care of himself, until the order of removal was issued which gives rise to this controversy.

It has been repeatedly decided (3 Harris 145, 2 Jones 92, and 3 S. & R. 117), and cannot now be a question, that children, until they have acquired legal settlements by their own acts, remain settled where born; the settlement of their parents being their

[Burrell Township *v.* Pittsburg Guardians of the Poor.]

settlement. This is a deduction from the statute, for it is not so expressly provided by the Act of 13th June 1836. But the act expressly provides that after the death of the husband the wife's legal settlement shall be *deemed* to be the place where he was last legally settled. This is equivalent to the expression, " *shall be taken to be,*" and admits of the existence of a different state of facts, namely, a settlement acquired by the widow herself; and so it has been decided in Mifflin Township *v.* Elizabeth Township, 6 Harris 17. That a widow may acquire a legal settlement thus, admits of no doubt. She may undoubtedly lease or buy real property and occupy it, being *sui juris*, as well as another. Still we have no reported decisions which carry a derivative settlement to her children, as a consequence of her settlement. Nor is there any statutory provision or decided case against it, in this Commonwealth. Why, therefore, shall it not be so on principle?

It is the headship of the family which gives to the settlement acquired by the father the same right to his unemancipated children. Why, therefore, should not this be so, of the last legal settlement of the mother, when she by death of her husband becomes the head of the family? I see not wherein charges upon the public would be increased by the application of the rule to an acquired settlement of the mother. She, if of sufficient ability, like her husband if living, is liable by the statute to maintain her children, and keep them from becoming a public charge. There is no distinction in this respect. Nor is there any difference in the process and mode by which she acquires a settlement, from that of any other person. She becomes entitled to it by a compliance with the terms of the Acts of Assembly, by leasing property of a certain yearly value, residing therein and paying the rent for one whole year, or by purchasing real property, occupying it and paying taxes thereon for the same length of time. In the same way, the husband, if living, would acquire a settlement for himself, and which would be communicable to his children. It is neither according to the natural or statutory law, that a woman is to separate from her children, or they from her, on the death of her husband; nay, more, they cannot be taken from her. What good reason can there be alleged why, when necessity, it may be, induces the widow with her family to leave the place of her husband's last settlement with a view to better her or their condition, that she shall not, on complying with the terms of the law, acquire a settlement communicable to her children? I see none, and I think there is none.

In England there is none, as has been decided in many cases: St. George's Parish *v.* St. Catharine's, 1 Sessions Cases 73; 2 Ld. Raym. 1474; Fortescue 218. So in Rex *v.* Barton Turfe and Happesburg, 2 Ld. Raym. 1734, *coram* Lord Hardwicke, C.

[Burrell Township v. Pittsburg Guardians of the Poor.]

J., and associates.   It was thus held that a child may gain a settlement under its mother's settlement, after the father's death, equally as under its father while living.   The mother's settlement has the same effect upon the child as the father's had.   This case is to be found in Burr. Settlement Cases 72, and in 3 Burn's Just. (374) 442.   See also Rex v. St. George's in Hanover Square, Set. Cas. 278.   There is no difference between an acquired and derivative settlement: Id. 482.

In Massachusetts the same thing has been held in several cases. Dedham v. Natick, 16 Mass. 135, is a decision in point, and contains a reference to others.   Wilde, J., in rendering the decision of the court in that case, says, " The mother, after the death of the father, remains the head of the family.   She is bound to support them if of sufficient ability; and they cannot by law be separated from her."   And in concluding in favor of the derivative settlement from the mother, he remarks, that this accords with the English .decisions on the subject.   The same doctrine is announced in Great Barrington v. Tyingham, 18 Pick. 264, in Bradford v. Lunenburg, 5 Vt. 481; Hebron v. Colchester, 5 Day 169; Norwich v. Saybrook, 5 Conn. 384; and in Lebanon v. Belure, 6 Id. 45.

More cases to the same effect might be cited, but we think it unnecessary.   It is not an answer to this view of the case, that the common law distinguishes between the rights of father and mother, in relation to the right of suit on account of services, or for injuries to children, growing purely out of the relation of parent and child.   The cases cited by the learned counsel for the defendant in error, of Leech v. Agnew, 7 Barr 21, and Fairmount Pass. Ry. Co. v. Stutler, 4 P. F. Smith. 375, mark this.   The distinction seems to be, that as the mother is not by implication of law bound for maintenance and education of her children, while the father is, therefore she is not entitled to claim for services or injury as parent merely.   But this is the difference between their parents, in relation to private parties; as to the public, in regard to their children, they are on precisely the same footing; each is bound to maintain them against becoming a public charge.   As to the public, therefore, each should derive the same results from settlement, and communicate similar consequences to their children, where no statute or policy forbids it. .

Entertaining these views, we think the learned president of the Quarter Sessions committed an error in reversing the order of the justices in the case, and that his order must be reversed.

. .       And now, January 3d 1870, the order of the Court of
        . Quarter Sessions of Indiana county in the matter
        of the order for the removal of Aaron F. Weir, a
        . pauper, from Burrell township, in said county, to the
        Guardians of the Poor of the City of Pittsburg, in

setting aside said order of the justices of the peace of said county of Indiana, is reversed, and the order of the justices affirmed, at the costs of the Guardians of the Poor of the City of Pittsburg.