GEORGE W. PRATHER, PLAINTIFF, v. JOHN R. HART, DEFENDANT.

</div>

1. **Office:** VACANCY. Where it appears *prima facie* that acts or events have occurred subjecting an office to a judicial declaration of being vacant, the authority having the power to fill such vacancy, supposing the office to be vacant, may proceed, before procuring a judicial declaration of the vacancy, to appoint or elect according to the form of law a person to fill it. *Leal v. Jones*, 19 Ind., 356.

2. ———: COUNTY JUDGE: TEMPORARY APPOINTEE. A vacancy

may exist in the office of county judge, although the duties of such office are being discharged by a person temporarily appointed by the proper authority.

3. ———: ———: CASE STATED. Upon the pleadings and evidence in the case, *Held*, That at the date of the filing of the information herein, the respondent, John R. Hart, was not entitled to the office of county judge of Franklin county, but did unlawfully intrude himself thereinto and did unlawfully hold and exercise the duties, franchises, and jurisdiction thereof.

QUO WARRANTO.

*J. R. Webster*, for plaintiff.

*A. F. Moore*, for defendant.

COBB, CH. J.

The constitution of the state, section 20 of article 3, provides that, " All offices created by this constitution shall become vacant by the death of the incumbent, by removal from the state, resignation," etc. The statute, section 101 of chapter 26, Compiled Statutes, provides as follows: "Every civil office shall be vacant upon the happening of either of the following events at any time before the expiration of the term of such office, as follows: 1. The resignation of the incumbent. 2. His death. 3. His removal from office. 4. The decision of a competent tribunal declaring his office vacant. 5. His ceasing to be a resident of the state, district, county, township, precinct, or ward in which the duties of his office are to be exercised, or for which he may have been elected," etc. It appears from the pleadings and testimony in this case that one Daniel Brown was, at the general election of 1883, elected to the office of county judge for Franklin county. His term of office commenced on the first Thursday after the first Tuesday of January, 1884, and would expire by its own limitation two years from that date. But it also appears from the said pleadings and testimony that he removed from the

state on the 2d day of June, 1884, and has never returned. The fact of such removal is not denied, but is admitted by the defendant. But his contention is, that such removal was not intended to be permanent but merely temporary. No doubt the word "removal" was used in the constitution in the same sense as the words "ceasing to be a resident of," as used in the provision of the statute above quoted. Section 31 of the chapter last above cited gives us a key to the construction of this language as applicable to a person who has been absent from the state, but has returned and offers his vote at an election. Indeed it gives us two keys, and leaves it quite uncertain which is the one applicable to the question in hand. · The *second* clause of said section is as follows: " A person shall not be considered or held to have lost his residence, who shall leave his home and go into another territory or state, or county of this state, for temporary purposes merely, with the intention of returning." While the *fifth* clause is as follows: "If a person remove to another state or territory, intending to remain there for an indefinite time and as a place of present residence, he shall be considered and held to have lost his residence in this state, notwithstanding he may intend to return at some future period."

As above stated, these rules are applicable to persons offering to vote at an election at the place of the former or general residence, and in the light of an actual return thereto, and if at all applicable to the case at bar it lacks the important circumstances of the actual return of the absentee.

The testimony on the point of the intention with which Judge Brown left the state is conflicting, to say the most of it. On the day of his departure he addressed a communication to the county board, saying: " As I am going away to be temporarily absent for a few weeks, I must respectfully ask that you appoint Hon. John R. Hart to act as county judge of said county during such absence."

Prather v. Hart.

The defendant, whose deposition was taken in his own behalf, and read at the hearing, testified as follows:

Int. 3. Did you ever have any conversation with Daniel Brown in regard to his intended absence from this county in and subsequent to the summer of 1884? If so, state what he said.

A. Yes. At about the last of April or first of June, 1884 Judge Brown told me that he was going to make a trip to Dakota to see his son and son-in-law. He spoke to me about acting as county judge during his absence; he said that he would leave a request with the county commissioners that I be appointed during his absence.

Int. 4. Did he, in these conversations, or any other time, state how long he intended to be absent, and when he expected to return? If so, state what he said.

A. The only definite time I remember of was six weeks.

I. E. Kelly, a witness on the part of the defendant, also testified to a conversation with Judge Brown as follows: "Talking of leaving the town, he said he was going to make a visit to some of his relations, either a son or son-in-law." No date is given to this conversation. Henry Runby, also a witness for defendant, testified that he had a conversation with Judge Brown, the date of which is not given, in which he said "he was going to take a trip up in Dakota to see his son." E. H. Marshall, a witness for respondent, testified: "I had conversation with Judge Brown several times concerning his trip to Dakota; can't say he expressed the nature of his absence, only that he had a son up there; was going up to see his son and the country, and see how he liked it." No date is given to any of these conversations.

A. F. Moore, also a witness on the part of defendant, testified as follows:

Int. 5. State if you had any conversation with said Daniel Brown during the spring and summer of 1884,

wherein the nature of his intended absence from the county was discussed?

A. I did have two such conversations with him.

Int. 6. State what was said?

A. The first conversation was on the porch of the Tremont Hotel, I should think the latter part of May, 1884. The conversation was commenced about a law suit which had been tried on that day; subsequently Brown spoke of intending to go to Dakota to be absent several weeks. He said he was going to take some of his children to Dakota and have them locate there. That while in office he was not able to be at home except on Sundays, and he could take his children to Dakota and he and his wife could then reside alone in Bloomington during the rest of his term. The other conversation was a few evenings later, and was in front of the post-office. The conversation commenced about an amusing law suit in which the parties and witnesses were all French. He said there was a ludicrous, and he supposed a tedious, case then pending in his court, in which all the parties and witnesses were French, and he said that he did not expect that case to be tried before him, because when he went away he expected to be gone a number of weeks, and he supposed some one would be appointed to act as county judge during his absence, and this case would be one of the cases to be tried.

On the other hand, Ira E. Cadman, whose deposition was taken on the part of the plaintiff, and used at the hearing, testified as follows:

Q. State all the facts and circumstances in regard to said Daniel Brown, his acts and conduct preparatory to his departure from this county, and preparation therefor, indicating his intention to remain absent permanently, or to return to this county?

A. I heard he was going to remove; heard at another time he was not going to remove. I went and saw him in person a month or two before he went away, asked him

if it was a fact that he was going to leave us. He said yes. I asked, "For good?" He said, "Yes, for good." I asked him "Who would be apt to get the appointment to fill the vacancy caused by his removal." He told me he did not know. I told him I had understood that he was going to resign in favor of John R. Hart. He said he was not going to resign in favor of anybody, but simply hand in his resignation.

Charles Y. Rickett, whose deposition was also taken on the part of the plaintiff, testified as follows:

Q. Have you heard at any time any conversation or statement in which he expressed his intention in regard to his intended absence being permanent or temporary?

A. I did.

Q. What was said at said conversation or conversations?

A. Had several talks with him. He often spoke of resigning the position of county judge and going to Dakota to live with his sons; and he said he would not resign but would go away and let the commissioners put in anybody they wanted to, that he did not intend to come back, and also wanted me to go there with him and open a printing office.

Q. When did this conversation occur?

A. Along in March and April, 1884.

J. R. McDonald, whose deposition was also taken on the part of the plaintiff, testified as follows:

Q. Have you heard at any time any conversation or statements of said Brown, either before he left this county or since that time, in which he expressed his intention in reference to his absence or in regard to his return to Franklin county?

A. Immediately after election in the fall of 1883, he told me that it did not make any particular difference if he had been beaten in the election, for he said he was going to Dakota where his boy was; I said, "Not to move, are

you?" He said, "Yes." I said, "Then there will be another fight for county judge next fall." He said, "Yes." He said he intended to go this fall—the fall of 1883; if not, then in the spring of 1884. He also told me between the first and tenth of April, 1884, that he was going to move to Dakota, up where his son was.

All of the above named witnesses and a great many others testified to the fact that said Daniel Brown sold off his farm and most of his personal property previous to his leaving for Dakota, and that he took with him all of his personal property which he had not sold. One or two witnesses thought that the sale of his farm took place before his election. All of them fixed the time of the sale of his personal property as about the tenth of May, 1884. All of them agreed that he took his family with him, except one, who stated that his family went on before him. All agreed upon information and belief that he went directly to Spink county, Dakota, and has never returned.

The act of February 20, 1883, entitled "An act to amend sections 103 and 107 of chapter 26," etc., provides that "vacancies occurring in any state, judicial district, county, precinct, township, or any public elective office, thirty days prior to any general election shall be filled thereat. Vacancies occuring in the office of county judge or justice of the peace shall be filled by election, but when the unexpired term does not exceed one year, the vacancy shall be filled by appointment as provided in section 103." Comp. Stat., Ch. 26.

Thirty days before the general election of 1884 was the 5th day of October of that year, so the question upon which this case turns is, was there a vacancy in the office on that day? In considering this question the fact that the defendant had been appointed by the proper authority to perform the duties of the office temporarily, is a circumstance of no significance. Had Judge Brown sent in his unconditional resignation instead of the paper which he

did send to the county board, or had he died on that day, doubtless it would have been the duty of the county board to appoint some competent person to discharge the duties of the office until the election at which such vacancy could be filled. See § 105, Chap. 26, C. S. In this connection I will remark that the county board evidently had the provisions of the above section in view when they appointed the defendant; the language of such appointment being, "That John R. Hart be and he is hereby appointed temporary county judge until the return of Daniel Brown, or until his successor is elected and qualified." It is a part and indeed the chief point of the defendant's contention, that the appointment of the defendant as temporary county judge amounted to an adjudication by the county board that the absence of Daniel Brown was but temporary, and that such adjudication, not having been appealed from is final, and cannot be attacked collaterally. It might be a sufficient answer to this argument to observe, that in making appointments the county board do not act judicially, and none of the qualities of judgments or findings attach to such proceedings. But as above intimated, it is with the status of the office as fixed by the removal and continued absence of the regular incumbent on the 5th day of October, 1884, that the consideration of this subject has to do.

If, when Judge Brown left the state, he had the intention to remain away indefinitely, the office thereupon became vacant instantly. If, on the other hand, he at that time intended to return to Franklin county within a period which, compared with the balance of his term of office, might be called "temporary," then he continued to be the incumbent of the office. But for how long? Certainly for no longer than he continued to have the intention to return, to make his absence but "temporary." Then if it be conceded that at the time Judge Brown left the state he intended to return within a definite time, and that that time was sufficiently short as to come within the meaning of the

word temporary, when compared to the term of his office, then did he continue of that mind and intention until the 5th day of October following? All the direct evidence we have on that point is contained in a copy of a letter written by Daniel Brown to the defendant under date of August 23, of that year, and an original letter written by him to John C. Grove, an old friend and former neighbor, of Franklin county, dated August 24. The first letter is devoted chiefly to finding fault with parties in Franklin county for treating the office as vacant, etc. He uses the following language: "I expect, if nothing happens, to return and assume the duties of the office of county judge about the 15th of November. * * * Hope you will have the office in good shape when I return. I will let you office with me. Am having a nice time visiting with my son-in-laws." This letter was written in reply to one to him from the defendant, which is not produced. Were it before us it would probably throw considerable light on what we have. The other letter, written the next day to Mr. Grove, is much such a letter as one farmer who had moved to a new country and was well pleased with the change would write to another whom he had left behind in the old one, and with whom he was on intimate terms of acquaintance, and whom he wished to induce to follow him. Not a word is said about an intention to return to Nebraska, but, on the contrary, most of the letter is devoted to a highly flattering description of Dakota, and wherever Nebraska is mentioned it is in terms of comparison inconsistent with the voluntary return of the writer from Dakota to Nebraska. He says: "There are three railroads within view of us, one six miles, one twelve miles, and one twenty miles. We can see the towns on all of these roads from our place. * * * Mother (meaning his wife) says tell Mrs. Grove there is such a nice 160 acres just across the road from ours, and no one living on it, that could be

bought cheap, and that she wished you was here and living on it so she could go over and see her. We have splendid neighbors."

There was about six weeks between the date of these letters and the fifth day of October, and whatever may have been the mind of the writer at the former date, the fact that he remained away and had not returned to this state at the time of the taking of the testimony, May 5, 1885, raises the presumption that the *animus revertendi*, if it ever existed in his mind, had given place to other intentions before the fifth day of October. The central and public facts were, that the county judge had sold off his property, left the state with his family, and had not returned. The time was approaching for the holding of the annual election, when it was the right of the voters to fill the vacancy caused by such removal. It was, therefore, the duty of the county clerk in publishing the notice for such election to include therein the office of county judge; this was done, and at the election the plaintiff was duly elected.

The point is made by the defendant that the plaintiff had not taken the oath of office as required by law, and the form of oath actually taken by him is given. Had the defendant made that the ground of his refusal to turn the office over to the plaintiff when demanded, we might have deemed it necessary to decide the point of the sufficiency of the form of the oath, but having resisted, on the claim that there was no vacancy to be filled at the said election, it is deemed necessary only to say that the form of oath taken by the plaintiff is that commonly, if not universally, used by county officers throughout the state.

The judgment of the court therefore is, that at the date of filing the information herein the defendant was not entitled to the office of county judge of Franklin county, but did unlawfully usurp the same, and intrude himself there-

into, and did unlawfully hold and exercise the duties, franchises, and jurisdiction thereof.

The usual writ of ouster will issue against him.

JUDGMENT ACCORDINGLY.

THE other judges concur.