[Civil No. 2732. Filed April 12, 1928.]

[266 Pac. 18.]

H. S. McCLUSKEY, Plaintiff, v. WILLIAM E. HUNTER, Defendant.

514

Mr. Irving A. Jennings, for Plaintiff.

Messrs. Flanigan & Fields, for Defendant.

McALISTER, J.—This is a *quo warranto* proceeding filed originally in this court by H. S. McCluskey and its purpose is to have the defendant, William E. Hunter, adjudged guilty of usurping and unlawfully holding the office of industrial commissioner of this state and the plaintiff declared to be the person entitled thereto and receive its emoluments.

It appears from the complaint that on June 12th, 1926, the plaintiff, H. S. McCluskey, was appointed by the Governor a member of the Industrial Commission of Arizona and that immediately thereafter he qualified and entered upon the duties of the office and ever since has been and now is the duly qualified and acting member of the Industrial Commission; that on January 17th, 1928, James H. Kerby, Secretary of

State and acting Governor, issued a proclamation attempting to declare the office of industrial commissioner held by plaintiff vacant and that he attempted on January 20th thereafter to appoint the defendant, William E. Hunter, to fill it; that immediately following the attempted appointment the said William E. Hunter usurped and intruded into the office of industrial commissioner and ever since has and now does intrude into and unlawfully hold said office to the exclusion of the plaintiff; that the plaintiff had no notice that such action was contemplated and no opportunity to be heard on the charges upon which it was based; that the reasons given by the acting Governor for attempting to declare the office vacant appear in his proclamation and are as follows:

"Whereas, it further appears that after the said McCluskey qualified as such officer, the said McCluskey was on the sixth day of April, 1927, duly appointed a member of the Colorado River Commission of Arizona, and that thereafter the said McCluskey duly qualified and entered upon the discharge of his duty as such member of said Colorado River Commission, and ever since has continued, and now continues to exclusively perform the duties of his office as a member of said Colorado River Commission; and

"Whereas, it appears to my satisfaction that the said H. S. McCluskey has continuously ceased to discharge the duties of his office as a member of the Industrial Commission of the state of Arizona for a period of more than four months next preceding this date; the said McCluskey not being prevented from performing his duties as a member of said Industrial Commission by reason of sickness or by reason of being absent from the state of Arizona; and

"Whereas, section 3, of chapter 83, Session Laws 1925, creating said Industrial Commission provides as follows:

" 'Limitation, Business and Political. No commissioner shall hold any office of trust or profit, or engage in any occupation or business other than his duties as such commissioner; and no commissioner

nor any regular employee of the commission shall serve on any committee of any political party'; and

"Whereas, the two said offices now attempted to be held by the said H. S. McCluskey are incompatible, especially in view of the provisions of section 3 of said chapter 83; and

"Whereas, paragraph 221, Revised Statutes of Arizona, 1913 Civil Code, is in part as follows:

" 'An office shall be deemed vacant from and after the happening of either of the following events before the expiration of the term: . . . (7) His ceasing to discharge the duties of his office for a period of three consecutive months, except when prevented by sickness, or when absent from the state by permission of the Legislature.' "

The answer is an elaboration of the facts contained in the proclamation and alleges in substance that the plaintiff was appointed on June 12th, 1926, to fill the vacancy on the Industrial Commission caused by the resignation of Cleve W. Van Dyke, who had been on January 8th prior thereto placed upon the commission for a term of six years; that after qualifying and at all times since January 8th, 1927, plaintiff has failed and neglected to discharge the duties of the office though not prevented from so doing by sickness or by his absence from the state through permission of the legislature. It is alleged also that on April 6th, 1927, the Governor appointed plaintiff a member of the Colorado River Commission, that he accepted the appointment and immediately thereafter entered upon the discharge of the duties of such office, and has at all times since continued to perform such duties by participating in the deliberations of the commission and accompanying its other members to points outside the state to effectuate and accomplish the things the act creating the commission imposed upon them. It further alleges that on January 20th, 1928, the Governor, Geo. W. P. Hunt, being at the time absent from the state, James H. Kerby, Secretary of State and

the officer upon whom the powers and duties of Governor devolve when the latter is not within the state, ascertained and declared the office of industrial commissioner held by plaintiff to be vacant, removed him therefrom and appointed the defendant, William E. Hunter, to fill the vacancy; that such action was taken because, first, the plaintiff ceased to discharge the duties of the office of industrial commissioner for three consecutive months when not prevented therefrom by sickness or absence from the state through permission of the legislature, and because, second, he accepted the office of Colorado River commissioner and at all times since has actively discharged the duties thereof; that since the appointment of defendant he has been in actual possession of the office of industrial commissioner and has performed all of the duties appertaining thereto.

The plaintiff moves to strike certain portions of the answer, demurs to it upon the ground that it does not state facts sufficient to constitute a defense to the complaint and replies specifically denying each and every allegation contained therein. The portions of the answer to which the motion and the demurrer both are directed deal with the plaintiff's failure to discharge the duties of the office and his acceptance of membership on the Colorado River Commission and the active performance of the duties of that position. A consideration of these two propositions will enable the court to determine the sufficiency of the answer and dispose of both the motion and the demurrer. To grant the former or sustain the latter will end the case in plaintiff's favor, but in view of the specific denials of the reply a contrary ruling on either will render the taking of testimony necessary.

It might be well to say here that under section 6, article 5, of the Constitution of Arizona, the powers and duties of the Governor, when that officer is absent

from the state, devolve upon the Secretary of State and his acts at such times, whatever they may be, are just as valid and binding as though they had been performed by the Governor himself. Hence, if a condition existed in Arizona on January 20th, 1928, that gave the chief executive of the state the right to appoint a member of the Industrial Commission there can be no question but that the acting Governor could have exercised this right just as effectively as could the Governor himself had he been within the state. Whether, however, it was good policy under the circumstances for him to do so or in keeping with the proprieties which an acting Governor might be supposed to observe is a matter which cannot be considered by the court.

It will be observed from the proclamation that in issuing it the Governor relied upon paragraph 221, Revised Statutes of 1913, Civil Code, and section 3 of the Industrial Commission Act, which is chapter 83, Session Laws of 1925, and, hence, that the vacancy was declared upon two grounds, the first being that plaintiff accepted the office of Colorado River commissioner and continuously thereafter discharged its duties, and the second that he failed and neglected to perform the duties of industrial commissioner for three consecutive months when he was not prevented from doing so by sickness or absence from the state by permission of the legislature. The plaintiff considers the second ground first, and we follow the same order.

His position is that the proclamation declaring the office of industrial commissioner held by plaintiff vacant, in so far as it is based upon paragraph 221, section 7, is void for the reason that under this provision notice and an opportunity to be heard are necessary and neither was given him. This paragraph and the succeeding one, 222, read as follows:

"221. An office shall be deemed vacant from and after the happening of either of the following events before the expiration of the term:

"(1) Death of the incumbent. (2) His insanity, founded upon a commission of lunacy issued to determine the fact. (3) His resignation, and the lawful acceptance thereof. (4) His removal from office. (5) His ceasing to be an inhabitant of the state or, if the office be local, of the district, county, city, or precinct for which he was chosen or appointed, or within which the duties of his office are required to be discharged. (6) His absence from the state, without permission of the Legislature, beyond the period of three consecutive months. (7) His ceasing to discharge the duties of his office for the period of three consecutive months, except when prevented by sickness, or when absent from the state by permission of the Legislature. (8) His conviction of a felony, or of any offense involving a violation of his official duties. (9) The failure, refusal, or neglect, of the person elected or appointed to such office, to file his official oath or bond within the time prescribed by law, whether such failure, refusal, or neglect shall have been caused by his death or from any other cause. (10) The decision of a competent tribunal declaring void his election or appointment.

"222. Whenever an officer is removed, declared insane or convicted of a felony or offense involving a violation of his official duty, or whenever his election or appointment is declared void, the body, judge or officer before whom the proceedings were had must give notice thereof to the officer empowered to fill the vacancy."

In providing that from and after the happening, before the expiration of the term, of any one of the ten events enumerated in 221 an office shall be deemed vacant, the legislature meant that these events are merely conditions the legal effect of the occurrence of any one of which is to render the office vacant. To say that an office shall be "deemed" vacant upon the happening of a certain event is equivalent to saying that it shall be vacant when that event occurs, for

the word "deemed" as used here means "treated as," "regarded as," "presumed" or "considered." In *Cooper et al.* v. *Slaughter,* 175 Ala. 211, 57 South. 477, the court said that the word "deemed" was the equivalent of "presumed" in an instruction correctly stating the law to be that the plaintiff is "deemed" to be the owner of all lands north of a boundary which was disputed and later established and acquiesced in by the parties. See *Kerckhoff-Cuzner M. & L. Co.* v. *Olmstead et al.,* 85 Cal. 80, 24 Pac. 648; *Powell* v. *Spackman,* 7 Idaho 692, 54 L. R. A. 378, 65 Pac. 503; *Leonard* v. *Grant* (C. C.), 5 Fed. 11; *Thompson et al.* v. *Cragg et al.,* 24 Tex. 582; *Burrell Township* v. *Pittsburg Guardians of Poor,* 62 Pa. 472, 1 Am. Rep. 441; Words and Phrases, First Series, vol. 2, pp. 1924, 1925. When, therefore, an officer is convicted of a felony, removed from office, becomes insane, fails to qualify within the time prescribed by law, ceases to discharge the duties of his office for three consecutive months when not prevented by sickness or absence from the state by permission of the legislature, or when in fact any one of the ten events mentioned in 221 happens during his term, the office occupied by him up to that time is in the eyes of the law vacant, and it is immaterial which one of the ten has occurred, for the legislature has given them each the same effect, its purpose evidently being to provide that a vacancy should arise just as surely upon the happening of any one of them as another. The language, "shall be deemed vacant," is imperative in form and no other construction of it is possible. *People* v. *Shorb,* 100 Cal. 537, 38 Am. St. Rep. 310, 35 Pac. 163; *People* v. *Hartwell,* 67 Cal. 11, 6 Pac. 873; *Independent School District, etc.,* v. *Miller,* 189 Iowa 123, 178 N. W. 323; *Prather* v. *Hart,* 17 Neb. 598, 24 N. W. 282; *People* v. *Glass* 19 App. Div. 454, 46 N. Y. Supp. 572. In construing sections 996 and 997 of the Political Code of California

from which 221 and 222, *supra,* in their original and substantially present form were taken, the Supreme Court of that state, in *People* v. *Shorb, supra,* used the following language in holding that the office of county treasurer became vacant when that officer, though for the purpose of receiving medical treatment, was absent from the state without permission of the legislature beyond the period allowed by law:

"The ten events mentioned in section 996 are merely conditions, upon the occurrence of any one of which the Legislature has declared the office shall become vacant, not as a penalty or forfeiture, but simply as the legal effect of the happening of any one of the events mentioned."

In four of the instances enumerated in 221, it is true, the second, fourth, eighth and tenth, the finding or judgment of a competent tribunal not the commission of the act upon which such finding or judgment is based, is the event which must occur before a vacancy can arise, and paragraph 222 requires that when one of these occurs—that is, when an officer is removed, declared insane, convicted of a felony or an offense involving a violation of his official duty, or his election or appointment is declared void—"the body, judge or officer before whom the proceedings were had must give notice thereof to the officer empowered to fill the vacancy." In the other six instances, however, no such action is required, but the happening of the event itself, not the finding of any tribunal that it has happened, creates the vacancy. Hence, if an officer dies, ceases to be an inhabitant of the state, fails to qualify within the time prescribed by law, absents himself from the state without permission of the legislature beyond the period of three consecutive months, resigns and his resignation is accepted, or ceases to discharge the duties of his office for three consecutive months unless prevented by sickness or absence from the state for three consecutive months

by permission of the legislature a vacancy in the office is created, *ipso facto,* and no proceeding or finding by any officer, court or other tribunal that the particular event has occurred is necessary to the existence of the right of the appointing power to fill it. The board or officer in whom this power rests may, in such an instance, exercise it upon receiving satisfactory information of the happening of the event creating the vacancy and his appointee is thereby entitled to the office unless or until a proper tribunal determines that a vacancy never arose. But, inasmuch as there is a possibility, though a very slight one, that through misinformation or perhaps imposition, such, for instance, as a forged resignation, an appointment might be made when no vacancy in fact exists, the incumbent of the office is not precluded from showing that the event relied upon to create the vacancy never occurred. He is entitled to his day in court on this proposition and may in a proper proceeding question the appointee's right to the office either before he takes possession of it, or afterwards as the plaintiff has done in this case, and, if the tribunal hearing it determines that the event did not happen and, consequently, that a vacancy never existed, the office and its emoluments are restored to him. *People* v. *Shorb, supra; State* v. *Jones,* 19 Ind. 356, 81 Am. Dec. 403; *People* v. *Glass, supra; Hill* v. *State,* 1 Ala. 559 (Book 10); *Independent School District, etc.,* v. *Miller, supra; Wells* v. *State,* 175 Ind. 380, Ann. Cas. 1913C 86, 94 N. E. 321; *People* v. *Common Council,* 77 N. Y. 503, 33 Am. Rep. 659; *Prather* v. *Hart, supra; State* v. *Wait,* 92 Neb. 313, 43 L. R. A. (N. S.) 282, 138 N. W. 159. Following the excerpt given above from *People* v. *Shorb,* the court continued:

"It is true that the occurrence of some of these events is conclusively established against the incumbent of the office by the finding or judgment of a competent tribunal, namely, his insanity, his removal

from office, his conviction of a felony, and the invalidity of his election. But in all these cases he has his day in court; and section 997 of the Political Code requires that 'the body, judge, or officer before whom the proceedings were had must give notice thereof, to the officer empowered to fill the vacancy.' But no official notice to the appointing power of the happening of any of the other events mentioned in section .996 is required; and, therefore, upon any kind of satisfactory evidence of the occurrence of any one of them, the appointing officer or board may make an appointment, though the incumbent of the office is not thereby concluded as to the fact of the occurrence of such event. He may still question and contest the allegation of that fact, either before or after the installation of the appointee, before such installation, if he refuse to vacate the office, in an action by the people to oust him; or, after such installation, in an action by the people on his relation to oust the appointee. Thus he may always have his day in court before it can be conclusively adjudged against him that the office was vacant at the time the appointment was made. The absence of Shorb from the state as alleged and admitted, *ipso facto,* effected a vacancy of the office of treasurer.''

In discussing the necessity of a judicial determination that a vacancy exists before an appointment can be made, the following statement of the Supreme Court of Indiana in *State* v. *Jones, supra,* is very much in point:

''(1) Where it appears, *prima facie,* that acts or events have occurred subjecting an office to a judicial declaration of being vacant, the authority authorized to fill such vacancy, supposing the office to be vacant, may proceed, before procuring a judicial declaration of the vacancy, and appoint or elect, according to the forms of law, a person to fill such office; but if, when such person attempts to take possession of the office, he is resisted by the previous incumbent, he will be compelled to try the right, and oust such incumbent, or fail to oust him, in some mode prescribed by law. (2) If such elected or appointed person finds the office, in fact, vacant, and can take possession, un-

contested by the former incumbent, he may do so, and so long as he remains in such possession he will be an officer *de facto;* and should the former incumbent never appear to contest his right, he will be regarded as having been an officer *de facto* and *de jure;* but should such former incumbent appear, after possession has been taken against him, the burden of proceeding to oust the then actual incumbent, will fall upon him; and if in such proceeding it is made to appear that facts had occurred before the appointment or election justifying a judicial declaration of a vacancy, it will be then declared to have existed, and the election or appointment will be held to have been valid.''

In *People* v. *Hartwell, supra,* the county tax collector ceased for more than three consecutive months to perform the duties of his office under the mistaken belief that the treasurer was from and after a certain date *ex-officio* tax collector and then brought an action to oust the treasurer and have himself reinstated. The court said:

''Public office is held upon the implied condition of diligently and faithfully executing the duties belonging to it; and a willful refusal to perform the duties works a forfeiture. . . . By the surrender and nonuser of the office for a period of two years relator therefore forfeited his right to it. The office became vacant. Section 996 of the Political Code provides: 'An office becomes vacant . . . by the incumbent's ceasing to discharge the duties of his office for the period of three consecutive months, except when prevented by sickness, or when absent from the state by permission of the Legislature.' ''

The plaintiff contends further that in so far as the proclamation is based upon 221, section 7, it must fall because this provision has in effect been replaced, or at least greatly modified, by section 2 of the act creating the Industrial Commission, which is later in time and reads as follows:

''Section 2. *Removals for Cause.*—The Governor at any time may remove any members of the com-

mission for inefficiency, neglect of duty, malfeasance, misfeasance or nonfeasance in office.''

The argument is that since this section gives the Governor the right to remove a member of the Industrial Commission for nonfeasance in office and 221, section 7, declares a vacancy shall occur upon the same ground, they deal with the same subject matter and should be construed together. When this is done, it is claimed, the earlier and more general provision is limited and qualified by the later and more specific one, and the result is to render the order void, because under the holding in *Farish* v. *Young,* 18 Ariz. 298, 158 Pac. 845, the plaintiff is entitled to a hearing before an order of removal becomes effective. This contention is wholly without merit because the two provisions deal with entirely different subjects. Two twenty-one refers to the events whose occurrence automatically creates a vacancy in any office in the state, county, or subdivision thereof, and section 2 to the causes for which one officer, an industrial commissioner, may be removed. The fact that the latter happens to include nonfeasance as one of the grounds for removal does not mean that the portion of the former providing that a vacancy automatically arises upon the failure to discharge the duties of the office is without application if such failure continues for three consecutive months. To give it this construction would be equivalent to saying that a vacancy upon this ground can never exist by operation of law and that the incumbent can continue indefinitely without excuse to fail to perform his duties and still be a *de jure* officer and entitled to the emoluments of the office. A mere statement of the proposition is its own refutation. There can be no question but that the events the happening of which renders an office vacant apply just as much to the office of industrial commissioner as to any other office in the state.

That this is peculiarly true of the event specified in subdivision 7 is indicated by the fact that the act creating this commission prohibits the members thereof not only from holding any office of trust or profit but from engaging in any other occupation or business, the evident purpose being to require them to devote their undivided time to the duties of the office.

While the proclamation declares the office vacant upon the two grounds mentioned therein, the letter of the acting Governor dated January 20th, 1928, to the plaintiff notifies him that "by virtue of the provisions of section 2, chapter 83, Session Laws of 1925, I have removed and *do hereby remove you from such office.*" (Italics ours.)  Having already declared the office vacant, an order of removal was wholly unnecessary and without effect, because a vacant office is one without an incumbent and if a vacancy did not then exist this order did not create one since section 2 under which it was made provides specifically that a member of the commission may be removed for cause only and under *Farish* v. *Young, supra,* he would be entitled not only to a hearing but to a decision based upon his lack of ability or fitness to perform the duties of the office rather than upon "mere whim, caprice, prejudice or passion."  If, however, the allegation that he failed to discharge the duties of the office for three consecutive months without excuse be true, a vacancy existed as a result of his own act, and it is obvious that a hearing under such circumstances would be useless.  *Farish* v. *Young* has no application where an office becomes vacant upon the happening of any of the events enumerated in 221, because under them, except where the finding of the tribunal itself is the event causing the vacancy, the incumbent removes himself, but in all cases of removal for cause this act is performed by another,

The whole matter, upon this phase of the case, may be summed up in the statement that if plaintiff ceased to discharge the duties of the office for three consecutive months without being sick or absent from the state by permission of the legislature the office became vacant at the expiration of this period, *ipso facto,* as a result of his own act, and necessarily no hearing or order of removal was required but if he failed in this duty for less than three consecutive months a vacancy could not occur without a hearing resulting in removal.

The second ground upon which the proclamation declares the office of industrial commissioner vacant is that plaintiff accepted appointment as a member of the Colorado River Commission on April 6th, 1927, and continued actively thereafter to discharge the duties of that office. The plaintiff contends, however, that in so far as the proclamation is based upon section 3 of the act creating the Industrial Commission it is void, because membership on the Colorado River Commission is not an office, and if it should be held to be one the proclamation is still void because plaintiff neither received a commission nor qualified by taking an oath, as the statute requires. It is apparent from these respective positions that it is necessary to determine first whether membership on the Colorado River Commission created by chapter 37, Laws of 1927, is an office within the meaning of section 3 of the Industrial Commission Act which reads as follows:

"Section 3. *Limitation, Business and Political.* No commissioner shall hold any office of trust or profit, or engage in.any occupation or business other than his duties as such commissioner; and no commissioner nor any regular employee of the commission shall serve on any committee of any political party."

In *Winsor* v. *Hunt,* 29 Ariz. 504, 243 Pac. 407, this court said that before a position or employment can

be termed an office it must possess these three elements:

"The specific position must be created by law; there must be certain definite duties imposed by law on the incumbent, and they must involve the exercise of some portion of the sovereign power."

An examination of the act creating the Colorado River Commission in the light of this definition discloses that it was passed by the eighth legislature in March last and that it provides for a commission of eight members that "shall exist for a period of two years from the date of its creation" and "take office on March 3, 1927, and on said date shall begin to function"; that its duty shall be to enter into negotiations with the accredited representatives of the states of Colorado, California, Nevada, New Mexico, Utah and Wyoming, and the federal government, for the purpose of effecting an agreement respecting the allocation of the waters of the Colorado River and its tributaries and all matters relating to the rights of Arizona, or its citizens and property owners to such waters and the benefits to be derived from the development thereof including hydro electric power, and to submit such agreements to the legislature of Arizona, the same to become binding when ratified by the legislature and approved by the Governor and Congress of the United States. It is further disclosed that to effect the purposes of its creation the commission is authorized to hold meetings and conferences within or without the state of Arizona with the accredited representatives of the several states or the federal government; to institute, prosecute, or defend in the name of the state any suits or legal proceedings to protect the rights of its citizens, property owners and itself in the Colorado River and its tributaries; to employ attorneys, counselors and experts to investigate and report on engineering problems rela-

tive to the Colorado River; to maintain an office, employ stenographers and issue and distribute reports informing the public of the facts with respect to Arizona's rights in the Colorado River. It is also disclosed that $100,000 is appropriated for the use of the commission in effectuating its purposes and that the members thereof shall serve without pay but shall be reimbursed for travel, hotel bills and incidental expenses.

It seems perfectly plain from this that the three elements necessary to constitute an office are present in the position of Colorado River commissioner. The duties imposed and authority conferred fulfill the requirements in *Winsor* v. *Hunt* in a high degree, to a very much greater extent in fact than do those in many positions which it would be admitted are properly designated as offices. This is particularly true in view of the fact that authorizing the commission to make agreements with other states respecting the rights of the state and its inhabitants in the Colorado River and its tributaries is virtually conferring upon it the treaty-making power of the state affecting one of its most valuable assets, and under section 10, article 1, Constitution of the United States, this power may be exercised by a state with the approval of Congress. If anything else were necessary to establish its official character, it may be found in the fact that the legislature itself regarded the position as an office, for the act provides that "the commission herein created shall take *office* on March 3d, 1927, and on said date shall begin to function." Laws 1927, chap. 37, § 3. The court in *Re Corliss,* 11 R. I. 638, 23 Am. Rep. 538, held that the Rhode Island member of the United States Centennial Commission was an officer and based its holding in part upon the fact that the commissioners were referred to in the act of Congress creating the commission as officers, and it might be added that in that case the term was

indefinite, "until the close of the exhibition," while here it is definite, "for a period of two years."

The plaintiff contends, however, that before a position in Arizona can constitute an office compensation or a salary must go with it, and in support of this position cites paragraphs 155 and 156, Revised Statutes of 1913, Civil Code, which read as follows:

"155. No person shall be eligible to any office, employment or service in any public institution in the state of Arizona, or in any of the several counties thereof, of any kind or character, whether by election, appointment or contract, unless before said election, appointment or contract he shall be or have become a citizen of the United States.

"156. By the word office and public institution, as used herein, is meant any office or institution the salary or compensation of which to the person filling it is paid out of a fund raised by taxation."

These provisions construed together mean merely that no person, except a citizen of the United States, shall be eligible to an office of any kind or character in Arizona, "the salary or compensation of which to the person filling it is paid out of a fund raised by taxation." It is clear that they deal entirely with offices of profit but it does not follow from this, as the query of counsel suggests, that we are "to assume that a person would be eligible to an office of trust in Arizona who is not a citizen of the United States," because the legislature had just provided in the preceding paragraph, 154, that "every officer must be of the age of twenty-one years and a citizen of the United States, and of this state," a fact which made a further reference in 155 and 156 to this particular qualification of those holding offices of trust entirely unnecessary. And there was no real necessity, it is true, to repeat it in these sections as to offices of profit, but in view of the fact that they, and especially employments and service in public institutions

carrying compensation, would be more eagerly sought, the legislature thought best to emphasize it as a matter of precaution.

It is further claimed that the fact that the act creating the commission requires that at least four of the commissioners shall be members of the legislature shows that it was not the intention of that body to make offices of the commissionerships, for the reason that the Constitution provides that legislators shall hold no other office during the term for which they were elected. The constitutional provision to which plaintiff refers (§ 5, art. 4, pt. 2) is not so broad in its language as this contention would imply. A reading of it discloses that it does prohibit legislators from being appointed or elected to "*any civil office of profit* under this state, which shall have been created, or the emoluments of which shall have been increased" during the term for which they shall have been elected. It will be observed that its only prohibition runs against an office of profit and that in no way does it interfere with a legislator's right to hold an office of trust. Doubtless it was the fact that members of the legislature would have been ineligible as commissioners had the act provided that they should be remunerated for their services that led to the insertion of the provision requiring them to serve without pay, but this requirement along with the one denominating the commissionerships as offices indicates that it was the legislature's intention to create an office (of trust) to which all of its members would be eligible.

The act creating the Industrial Commission recognizes the fact that there are offices of trust as well as offices of profit, and section 3 thereof, unlike the foregoing provision respecting legislators, due to the fact that it was passed to accomplish a different purpose, prohibits the members of such commission while serving in that capacity from holding either, the disjunc-

tive "or" instead of the conjunctive "and" being used. This provision does not, however, render members of this commission ineligible to any other office of trust or profit but has the effect of rendering vacant the office of industrial commissioner when the person holding that position accepts another office, even though it be merely an office of trust. In *Campbell* v. *Hunt,* 18 Ariz. 442, 162 Pac. 882, this court held that the occupant of an office who accepts a second office when prohibited by law from doing so *ipso facto* vacates the first one, the effect being the same as the acceptance of a second incompatible office at common law. That was a case in which the plaintiff, Thomas E. Campbell, who, while a member of the state tax commission, had been given a certificate of election as Governor. He did not resign as commissioner though paragraph 4822 of the Revised Statutes of 1913 (Civ. Code), prohibited a tax commissioner from holding any other position while he was a commissioner, and upon the ground that he could not hold the office of Governor while serving as tax commissioner possession of that office was refused. In holding that his occupancy of the office of Governor *ipso facto* vacated the office of tax commissioner, the court said:

"Obviously the effect of the statute is not to prohibit a tax commissioner from holding any other position of trust or profit during his term of office, but the effect of the provision is that, if a member of the tax commission does so, he by that very act vacates his office as tax commissioner—creates a vacancy in the tax commission. At common law, if a person while occupying one office accepts another incompatible with the first, he *ipso facto* vacates the first office, and his title thereto is thereby terminated, without any other act or proceeding. If necessary, *mandamus* would issue to install his legally appointed or elected successor. Public policy is clearly announced in this statute to the effect that a member of the tax commission is arbitrarily prohibited from holding two offices of trust or profit or the like at the same time,

whether or not the two offices would be deemed incompatible. Upon receiving the certificate of election and taking and filing the oath of office prescribed by law, the plaintiff unqualifiedly accepted the office he is now contending for and *ipso facto* he vacated the office of tax commissioner. It is well settled by an overwhelming array of authority that the holding of one office does not render the incumbent ineligible to another, but that the acceptance of the second office, when prohibited, *ipso facto* absolutely vacates the first office. The following authorities may be consulted: McCrary on Elections (3d Ed.), § 304, p. 206; *State [ex rel. Barnhill]* v. *Thompson,* 122 N. C. 493, 29 S. E. 720; *State ex rel. Walker* v. *Bus,* 135 Mo. 325, 33 L. R. A. 616, 36 S. W. 636; *Shell* v. *Cousins,* 77 Va. 328; *Attorney General* v. *Oakman,* 126 Mich. 717, 86 N. W. 151, reported in 86 Am. St. Rep. 574, with extended notes on the loss of one office by accepting another.''

For authorities in addition to those cited above, see the following: *Attorney General, etc.,* v. *Common Council of Detroit,* 112 Mich. 145, 37 L. R. A. 211, 70 N. W. 450; *Moore* v. *Wesley,* 125 Kan. 22, 262 Pac. 1035; *Whitehead* v. *Pittman,* 165 N. C. 89, 80 S. E. 976; *State* v. *Brinkerhoff,* 66 Tex. 45, 17 S. W. 109; *Attorney General* v. *Oakman,* 126 Mich. 717, 86 Am. St. Rep. 574, 86 N. W. 151.

Plaintiff contends, however, that he never became a member *de jure* of the Colorado River Commission, for the reason that he neither received a commission as such commissioner, as required by paragraphs 53, 163 and 164, Revised Statutes of 1913, Civ. Code, nor qualified by taking and filing the oath of office in accordance with the provisions of paragraphs 178, 179, 181 and 221, of the same Code, and, therefore, that he could not have vacated the office of industrial commissioner. In view of the allegations of the answer that on April 6th, 1927, he accepted appointment as a member of the Colorado River Commission and continued actively thereafter to discharge the duties of

that office, it is unnecessary, in passing on the motion to strike and the demurrer, to determine whether he sufficiently complied with the statute to make himself an officer *de jure*. *McIntosh* v. *Long et al.*, 186 N. C. 516, 120 S. E. 87. If these allegations be true, he became a Colorado River commissioner *de facto* and nothing more was required to render the office held by him up to that time vacant, because his acts as such commissioner were just as binding upon the state and third parties as though he had received his commission and qualified by taking and filing the oath of office. The important and controlling fact was the acceptance by him of an office which the law prohibited him from holding while he was a member of the Industrial Commission, not the manner in which he accepted it, and the only construction the law permits to be placed upon such an act is that he wished to retain that office no longer, and thereby vacated it. That this is especially true in the case of members of that commission is shown by the provision requiring them to give the state all of their time and forego everything else in the way of an office, occupation or business that would interfere therewith.

It follows from what has been said that the motion to strike should be denied and the demurrer overruled, and it is so ordered. But inasmuch as the allegations of the answer dealing with the matter of plaintiff's failure for three consecutive months to discharge the duties of the office of industrial commissioner when not excused, and also those referring to his averred acceptance of the office of Colorado River commissioner are denied, the facts necessary to determine those must be found before a final disposition of the case can be had. It is, therefore, ordered that unless the parties, before the expiration of ten days from date, file in this court a stipulation of the facts necessary to a final disposition of the matter, the case

be referred to the superior court of Maricopa county for a determination of the facts and their certification to this court for final judgment.

ROSS, C. J., and LOCKWOOD, J., concur.