511 P.2d 630

**STATE of Arizona ex rel. Gary K. NELSON, Attorney General, Petitioner,**

v.

**YUMA COUNTY BOARD OF SUPERVISORS et al., Respondents.**

No. 11209.

Supreme Court of Arizona,
En Banc.

July 3, 1973.

Gary K. Nelson, Atty. Gen., by James B. Feeley, Asst. Atty. Gen., Phoenix, for petitioner.

William Michael Smith, Yuma County Atty., Yuma, for respondents.

HAYS, Chief Justice.

The Attorney General filed a Petition for Special Action with this court, alleging

that the Yuma County Board of Supervisors had announced its intention of appointing a current member of the Arizona House of Representatives, Honorable Jones Osborn, to fill the vacancy in the Arizona Senate created by the untimely death of Senator Harold Giss. He sought an order prohibiting this appointment. We accepted jurisdiction of the petition for special action, denied the relief sought by the Attorney General, and indicated that our decision would be forthcoming at a later date.

The provision at issue, article IV, part 2, section 5 of the Arizona Constitution, A. R.S., reads as follows:

"No member of the Legislature, during the term for which he shall have been elected or appointed shall be eligible to hold any other office or be otherwise employed by the State of Arizona or, any county or incorporated city or town thereof. . . ."

Does this provision prohibit a member of the House of Representatives from being appointed to fill a vacancy in the Senate? We hold that it does not.

Admittedly, a purely legalistic argument can be advanced to support petitioner's position. A reading of all of part 2 of article IV of the Arizona Constitution indicates a number of references to "Legislature" used in the context of a single unit. If the result argued for by the Attorney General had been desired by the drafters of the constitutional amendment here in question, it would have been a simple matter to use the words, "No member of the *Senate* or the *House of Representatives* . . . .," rather than the words, "member of the Legislature."

It appears to us that the most reasonable interpretation of the subject provision is to hold that "member of the Legislature" is the office with which section 5 is concerned; hence, an appointment from House to Senate is within the same office.

We are further persuaded in our position by referring to the history of this section which was presented to the voters of

Arizona by way of initiative petition in 1938. There was concern that members of the Legislature might create positions for their own gain, or otherwise be subjected to pressures from the executive branch. In a move from House to Senate, we find nothing inherent which represents the evil sought to be prevented.

We therefore believe that there is no constitutional impediment to the appointment by the Yuma Board of Supervisors of a qualified and experienced member of the House of Representatives to fill the Senate vacancy.

Petition for Special Action dismissed.

STRUCKMEYER, and LOCKWOOD, JJ., concur.

CAMERON, V. C. J., did not participate in the determination of this matter. WILLIAM E. EUBANK of the Court of Appeals, Judge, Division One, was called to sit in his stead.

EUBANK, Presiding Judge (dissenting).

I must dissent from the majority opinion for the following reasons:

1. The legislative intention and purpose expressed in the phrase "No member of the Legislature . . . ." as used in Article 4, Part 2, Section 5 are clear and not ambiguous; consequently, that phrase does not require judicial construction;

2. If I assume that it is ambiguous for the purpose of discussion, the legislative history and rules of construction require that I reach a contrary conclusion to that reached by the majority.

1. ARTICLE 4, PART 2, SECTION 5 IS NOT AMBIGUOUS

It is my opinion that the intention and purpose of the electors are clearly expressed in the phrase "No member of the Legislature" as used in Article 4, Part 2, Section 5, as amended, and that this provision precludes the appointment of a person occupying the state office of representative during his term of office from holding a vacant state office of senator.

450

Article 4, Part 2, Section 5, as amended, reads as follows:

"Section 5. *No member of the Legislature,* during the term for which he shall have been elected or appointed shall be eligible to hold any other office or be otherwise employed by the State of Arizona or, any county or incorporated city or town thereof. This prohibition shall not extend to the office of school trustee, nor to employment as a teacher or instructor in the public school system. As amended, election Nov. 8, 1938, eff. Dec. 14, 1938." (emphasis added)

The "Legislature" is described as one of the tripartite branches of Arizona state government in Article III of the Arizona Constitution, and it is a bicameral legislature composed of two houses: A Senate and a House of Representatives. Constitution, Article 4, Part 1, Section 1.

Our bicameral legislature was copied from Article 1, Section 1 of the United States Constitution, which reads:

"All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives."

Under these systems there is simply *no such office* as "Member of the Legislature," "Legislator," or "Congressman;" There are only the state and federal offices of "Senator" or "Representative." Citizens interested in election to either of these offices must circulate nominating petitions and run for election to a particular office of "Senator" or "Representative." They are not nominated or elected for the office of "Member of the Legislature," as implied by the majority opinion.

It is true as the majority opinion states that Article 4, Part 2, refers often to the "Legislature" as a unit, but it is clear to me that such references are used in a generic sense to describe the legislative branch of the state government, or as a single inclusive term to describe both houses thereof collectively without constantly repeating both of their names. There is no indication that such references were used in the sense of affecting the particular makeup of the independent houses of the bicameral legislature or the substantive provisions relating to the state offices of Representative and Senator. For example, Sections 8, 9, 10, 11, 12 and 15 of Article 4, Part 2, deal with "each house" of the Legislature, while Sections 2, 3, 4, 5, 6, 7, 16, 17, 18, 21 and 24 deal with "members of the Legislature" or the "Legislature." A reading of all of these sections does not, in my opinion, in any way support the majority conclusion. Furthermore, the majority's statement that the use of the words "no member of the *Senate* or the *House of Representatives*" rather than the words "member of the Legislature" would have been a simple matter does not change the meaning of the section as it is now written. All the substituted words would do is insert the names of the constituent parts for the name of the whole which is now used in the section. The problem here is not, in my mind, whether the proposed appointee is a "member of the Legislature," or under the majority's substitute, a "member of the Senate or the House of Representatives," but rather whether any "member of the Legislature" may, *"during the term for which he shall have been elected"* and during which he is obviously holding office as either a senator or representative, be appointed to hold any *different* office *than that to which he was elected.*

In both State v. Lockhart, 76 Ariz. 390, 265 P.2d 447 (1953), and Brown v. Superior Court, 81 Ariz. 236, 303 P.2d 990 (1956), it was held that the office of state senator is a state office. The use of the phrase "during the *term* for which he shall have been elected" (emphasis added) and the words *"other* office" (emphasis added) obviously relate the "member of the legislature" to the term *and office* for which he was specifically elected. The plain meaning of the provision is therefore that no such member shall be eligible for appointment to any *other* office than that for which he was elected, during the term thereof. The office of senator is some other office than that of representative,

and the proposed appointment is therefore prohibited.

## 2. LEGISLATIVE HISTORY AND RULES OF CONSTRUCTION

Assuming for the purpose of argument that Article 4, Part 2, Section 5, as amended, is ambiguous and in need of judicial construction, I am still of the opinion that a representative is not eligible to be appointed to a vacant senate seat during his term of office.

I believe that Article 4, Part 2, Section 5, as amended, was derived from Article 1, Section 6, Clause 2, of the Constitution of the United States which reads:

> "No Senator or Representative shall, during the Time for which he was elected, be appointed to any civil Office under the Authority of the United States, which shall have been created, or the Emoluments whereof shall have been encreased during such time; and no Person holding any Office under the United States, shall be a Member of either House during his Continuance in Office."

The term "civil office" has been interpreted to mean appointment to an office in the executive branch of government. Reservists Committee to Stop the War v. Laird, 323 F.Supp. 833 (D.D.C.1971).

Article 4, Part 2, Section 5, was a part of Substituted Proposition No. 6 adopted at the Constitutional Convention in 1910 and it read as follows:

> "Section 5. No member of the Legislature, during the term for which he shall have been elected, shall be *appointed or elected* to *any civil office of profit under this State, which shall have been created, or the emoluments of which shall have been increased, during said term.*" (Emphasis added)

The italicized portion of Section 5 was removed by the 1938 initiative amendment, so that the present section reads as quoted heretofore. A before and after comparison shows that in line three of the original Section 5 the words "appointed or elected"

were replaced by the single word "Eligible" in the 1938 amendment, and in line four the words "any civil office of profit under this State," etc., were replaced by "hold any other office or be otherwise employed by the State of Arizona," etc., in the 1938 amendment.

It is clear to me that the 1938 amendment was designed by the initiators and electors to be much more restrictive on "members of the Legislature" than was the original Section 5. This conclusion is inescapable when the significance of the removal of the phrase "any civil office of profit under this State" is appreciated. Three Supreme Court cases illustrate the problem. The first is Winsor v. Hunt, 29 Ariz. 504, 243 P. 407 (1926). In *Winsor* the court held that an incumbent state senator could properly be appointed as a clerk in the office of the Code Commissioner, at the same time that he was holding the office of a state senator, and be paid an additional salary, since the position of clerk was not a "civil office of profit" prohibited under Article 4, Section 5 of the Constitution. The Court reasoned that because the senator was a mere employee of the Code Commission and not personally exercising any portion of the state's sovereign power in that capacity the provision did not apply in his case. Several years later the Supreme Court was faced with the same issue in McCluskey v. Hunter, 33 Ariz. 513, 266 P. 18 (1928), the second case. In construing the same phrase "any civil office" in the original Section 5, the Court said:

> "It is further claimed that the fact that the act creating the [Industrial] commission requires that at least four of the commissioners shall be members of the Legislature shows that it was not the intention of that body to make offices of the commissionerships, for the reason that the Constitution provides that legislators shall hold no other office during the term for which they were elected. The constitutional provision to which plaintiff refers (§ 5, art. 4, pt. 2) is not

so broad in its language as this contention would imply. A reading of it discloses that *it does prohibit legislators from being appointed or elected to 'any civil office of profit under this state,* which shall have been created, or the emoluments of which shall have been increased' during the term for which they shall have been elected. *It will be observed that its only prohibition runs against an office of profit and that in no way does it interfere with a legislator's right to hold an office of trust.* Doubtless it was the fact that members of the Legislature would have been ineligible as commissioners had the act provided that they should be remunerated for their services that led to the insertion of the provision requiring them to serve without pay, but this requirement along with the one denominating the commissionerships as offices indicates that it was the Legislature's intention to create an office (of trust) to which all of its members would be eligible." (Emphasis added) (33 Ariz. at 532, 266 P. at 25.)

The third case is Sellers v. Frohmiller, 42 Ariz. 239, 24 P.2d 666 (1933). In this case a member of the House of Representatives was appointed secretary to the Governor to assist in the disbursement of appropriations for operation and travel. The act creating the position was attached as a rider to the general appropriations act, which the court found violated Article 4, Part 2, Section 20 of our Constitution. An additional issue raised was the alleged violation of Article 4, Part 2, Section 5 by Sellers' appointment as the Governor's secretary while he was still holding office as a representative. The court admitted that the contention was "not without merit" but avoided the question on the basis that they had already declared the act unconstitutional. The first two cases, *Winsor* and *McCluskey*, illustrate the very restrictive interpretation placed on "civil office of profit" by the court, while the third case, *Sellers*, would comport with the federal case, Reservists, *supra*, reasoning. These three cases, I believe, form the decisional backdrop to the 1938 initiative drive to amend Article 4, Part 2, Section 5.

The initiative measure went to the electors in the November 8, 1938 general election and was enacted. As has been pointed out, the phrase "any civil office of profit under this State," etc., was replaced by "hold any other office or be otherwise employed by the State of Arizona," etc. In State v. Lockhart, *supra*, and Brown v. Superior Court, *supra*, the office of state senator was found to be a state office. I am certain from reading those cases that the result would not have been any different if the office of representative had been involved; in fact, in the Lockhart case, *supra*, the Court declared that "members of the legislature are undoubtedly state officers." (76 Ariz. at 394, 265 P.2d at 450).

It is therefore my opinion that since Representative Osborn *is* a present "member of the Legislature," still serving the unexpired term as Representative to the 5th District, to which he was elected, and that since the vacant senate seat in District 5 is an "other office," Article 4, Part 2, Section 5 of the Arizona Constitution precludes his appointment to the office of senator.

In further support of my conclusion, it should be noted that the initiative measure appeared on the ballot at the November 1938 General Election in the following form:

"PROPOSED AMENDMENT TO THE CONSTITUTION PROPOSED BY INITIATIVE PETITION

"MEMBERS OF LEGISLATURE NOT ELIGIBLE FOR PUBLIC APPOINTMENT DURING TERM OF OFFICE TO WHICH ELECTED

"PROPOSING AN AMENDMENT TO THE CONSTITUTION OF THE STATE OF ARIZONA RELATING TO THE ELECTION OR APPOINTMENT OF MEMBERS

OF THE LEGISLATURE TO PUBLIC OFFICES OR POSITIONS, AND AMENDING SECTION 5, PART 2, ARTICLE IV.

"If you favor the above law, vote YES: if opposed, note NO."

(1939 Session Laws of Arizona at 372, 373.)

The second paragraph which reads: "Members of Legislature Not Eligible for Public Appointment During Term of Office to Which Elected" is certainly worthy of our consideration in determining what the electors *intended* when they amended Article 4, Part 2, Section 5. In a few choice words this paragraph, by which the proposal was submitted to the voters, aptly summarizes my opinion that a representative is simply not eligible for appointment to the senate during his term of office.

The only court decision that I can find following the 1938 amendment of Section 5 is State v. Myers, 89 Ariz. 167, 359 P.2d 757 (1961). In that case Myers ran for and was elected representative from Legislative District No. 18 of Maricopa County. An opening developed in the Maricopa County Superior Court, and the Governor appointed Myers to fill that vacancy. The Attorney General brought a *quo warranto* action against him maintaining that he was a member of the House of Representatives and thereby barred by Article 4, Part 2, Section 5, as amended, from being appointed to the Superior Court. The Supreme Court, noting that the prohibition of Section 5 was limited to members of the legislature, held that since Myers had not taken the oath and qualified as a member of the House of Representatives he was not yet a member of the Twenty-fifth Legislature and therefore was not barred from appointment by Article 4, Part 2, Section 5, as amended. The Court's reasoning in *Myers*, I believe, conflicts with the majority opinion here. The Court said:

"The particular question at issue here, then becomes when and under what circumstances does a person elected to the Legislature become a member thereof?

We note first that by the constitutional provision, Article IV, Part 2, Section 8: 'Each House, when assembled, shall choose its own officers, judge of the election and qualifications of its own members, and determine its own rules or procedure.' Until affirmative action is taken by the House by judging of the election and determining the qualifications of those seeking to be seated, a person elected may not become a member. Pursuant to the foregoing constitutional provision the Legislature has prescribed the minimum qualifications for admittance as a member of both the Senate and the House. A.R.S. § 41-1101 requires the presentation of a certificate of election together with the taking of the oath of office prescribed for all public officials. As has been pointed out, defendant was absent on January 9, 1961, when the Twenty-fifth Legislature convened. The Committee on Credentials reported on those 'entitled to be seated' but excepted defendant, nor did defendant then or thereafter take the oath of office prescribed. Accordingly, it is our conclusion that defendant, Robert L. Myers, did not then and never has become a member of the Twenty-fifth Legislature and was, therefore, not within the constitutional disqualification against holding another public office of the state or county during the term for which he was elected." (89 Ariz. at 170; 359 P.2d at 759–760.)

Next, in my opinion, the rules of construction do not support the majority opinion. Article 2, Section 32, provides that: "The provisions of this Constitution are mandatory, unless by express words they are declared to be otherwise." "Mandatory" was defined in State v. Nabours, 79 Ariz. 240, at 243, 286 P.2d 752, at 754 (1955) as a "command and hence obligatory with which we must implicitly follow and obey." Since I believe that the intent and purpose of the provisions of Article 4, Part 2, Section 5, are clear, for the reasons heretofore stated, it is my opinion that the

454

prohibition against this appointment is mandatory and must be enforced.

Finally, in addition, it is our obligation to determine the intent of a particular section of the Constitution in relation to the Constitution as a whole by endeavoring to give such a construction to it as will make it effective and in harmony with all of the other parts. Kilpatrick v. Superior Court, 105 Ariz. 413, 466 P.2d 18 (1970); Corporation Commission of Arizona v. Pacific Greyhound Lines, 54 Ariz. 159, 94 P.2d 443 (1939). In my opinion, requiring the electors to state with particularity "representative" and "senator" rather than the generic term "Legislature," would not only have not changed the meaning of this provision but would not meet the requirement of this rule of construction.

For the reasons stated, I would grant the relief requested by the Petition for Special Action.

HOLOHAN, J., concurs.